UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORENO, <br><br> Plaintiff, <br><br> v. <br><br> V. HULL, ET AL., <br><br> Defendant(s). | Case No. EDCV 20-272-CJC (KK) <br><br> ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## **INTRODUCTION**

Plaintiff Anthony Moreno ("Moreno"), an inmate proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his Eighth and Fourteenth Amendment rights as well as a state law claim for intentional infliction of emotional distress. For the reasons discussed below, the Court dismisses the Complaint with leave to amend.

///
///
///
///
///

## II.

## **ALLEGATIONS IN THE COMPLAINT**

On January 24, 2020, Moreno, who is currently detained at Valley State Prison, constructively filed[1] the Complaint against defendants V. Hull, A. DeLeon, R. Rodriguez, J. Espinoza, and Hernandez ("Defendants"), correctional officers at Ironwood State Prison employed by the California Department of Corrections and Rehabilitation, in their individual and official capacities. ECF Docket No. ("Dkt.") 1. The Complaint arises out of various incidents that occurred while Moreno was an inmate at Ironwood State Prison.

According to the Complaint, on May 31, 2018 at approximately 8:30 a.m., defendant Hull conducted a "random 'clothed' pat down body search" of Moreno. Id. at 5. During the search, defendant Hull "turned to female correctional officer R. Luna, directing her attention to a small tear located in [Moreno's] 'fly button crotch area' stating to her 'This is where inmates hide bundles of drugs.'" Id. Defendant Hull "spread open the 'fly area' of [Moreno's] pants and boxers, then contacted [Moreno's] penis while committing the exposure where such exposure was done in a manner where female officer Luna could view [Moreno's] exposed penis." Id. Moreno questioned defendant Hull regarding his "harassment and unprofessional conduct" and defendant Hull responded: "I'm gonna keep messing with you until I catch you" and "me and you can get unprofessional whenever you want." Id. at 6.

On June 1, 2018, Moreno submitted a Form 22 Inmate Request Form regarding defendant Hull's "sexual misconduct." Id.

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); see Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

2

On June 4, 2018, defendant Hull questioned Moreno regarding the Form 22. Id. When Moreno explained why he had filed the Form 22, defendant Hull said: "All right then motherfucker, it's on! I'm gonna get you now." Id. at 7.

Later in the day on June 4, 2018, Moreno informed defendant Hernandez he wanted to make a Prison Rape Elimination Act ("PREA") call regarding defendant Hull's conduct. Id. at 7-8. Defendant Hernandez instructed Moreno to "go to his cell until she notified the sergeant of Moreno's intentions." Id. at 8. Later that same day, defendant Sergeant DeLeon came to Moreno's housing unit in connection with Moreno's request to make a PREA call. Id. Moreno told defendant DeLeon about the May 31, 2018 incident as well as two prior incidents with defendant Hull on February 12, 2018 and May 16, 2018. Id. at 8-10. Defendant DeLeon told Moreno: "If you go through with this then you are going to regret it. You are going to sit in the hole (administrative segregation) for six months pending an investigation, and that's not worth it because your claims do not merit a PREA call. Think this through very carefully." Id. at 10. Defendant DeLeon told Moreno he would stop defendant Hull's harassment and he would have defendant Hernandez would respond to a Form 22 regarding her reason for denying the PREA call. Id. at 10-11.

On June 11, 2018, Moreno submitted a Form 22 requesting documentation regarding the February 12, 2018 incident. Id. at 11-12. Later that day, defendant DeLeon confronted Moreno and said: "I already told you Moreno, if you keep pressing this issue I'm gonna put you in the hole . . . and that's after I take you over to medical, put you in a paper jumpsuit for 24 hours, and perform a rape kit on you." Id. at 12.

On June 20, 2018, Moreno was interviewed by a lieutenant regarding defendant Hull's conduct. Id. at 13. The lieutenant ordered Moreno be placed in administrative segregation. Id. Later that evening, Moreno was taken to the Triage Treatment Center where a nurse and then a male doctor conducted a PREA "Screening

3

Evaluation." Id. at 13-14. Moreno was then placed in administrative segregation. Id. at 14.

On June 28, 2018, Moreno was released from administrative segregation to A-Facility, rather than B-Facility where he had been housed previously. Id. at 14-15.

On July 17, 2018, while Moreno was walking on the exercise yard, defendants Hull and DeLeon were standing in front of the A-Facility Program Office and defendant Hull saw Moreno and informed another correctional officer: "There's the bitch who tried to PREA me." Id. at 15.

On July 18, 2018, Moreno submitted a Form 22 to defendant Rodriguez regarding the incident on July 17, 2018. Id. at 16.

On July 21, 2018, defendant Rodriguez told Moreno: "Hey Moreno, I didn't know that you and Sergeant DeLeon have problems. Don't be having me sign 22 Forms against other officers 'cause we don't play that crying shit over here." Id. Later that day, defendants Rodriguez and Espinosa conducted a cell search of Moreno's cell. Id. at 16-17. Afterward, while Moreno was cleaning up his cell, he noticed two sheets of paper that did not belong to him titled "Hurt Feelings Report" and "Telling Form." Id. at 17, Ex. M.

On July 24, 2018, Moreno attempted to call the Coachella Valley Sexual Assault Hotline number, but when he had trouble completing the call, he informed defendant Rodriguez of the problem. Id. at 17. Defendant Rodriguez responded: "We'll put in a work order." Id. On July 26, 2018, Moreno was informed the hotline number was "inoperable." Id. at 18.

On August 6, 2018, Moreno filed a "Staff Misconduct/Harassment" complaint against defendants Rodriguez and Espinosa. Id. at 18-19.

On August 13, 2018, Moreno filed a request for his medical records pertaining to the PREA medical evaluation on June 20-21, 2018. Id. at 19.

Moreno alleges based on these facts, "the criminal negligence and deliberate indifference by all Defendants became one 'continuous course of conduct' to include

4

collusion, based on the original actions of Defendant Hull were 'intertwined' by all five Defendants and became the proximate cause(s) of the Civil Rights violations complained of, verified by these same Defendants' action and non-actions, as well as their disclosure and non-disclosure." Id. at 20-21.

Moreno seeks compensatory and punitive damages. Id. at 22. Moreno specifically notes his claims for monetary relief have been exhausted. Id.

## III.

## **STANDARD OF REVIEW**

Where a plaintiff is incarcerated and/or proceeding in forma pauperis, a court must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint

1 need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 339 (1989), and a court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

If a court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).
///
///
///
///

# IV.

# **DISCUSSION**

**A. THE ELEVENTH AMENDMENT BARS MORENO'S CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY**

**1. Applicable Law**

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). As to state officials sued in their official capacity, the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief (including monetary damage claims) but does not immunize them from claims for prospective relief (such as forward-looking injunctive relief). Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908).

**2. Analysis**

Here, the Eleventh Amendment bars Moreno from pursuing claims that seek monetary relief against Defendants, who are state employees, in their official capacity. See Graham, 473 U.S. at 169-70 (holding the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity"). Moreno's claims against Defendants in their official capacity are, therefore, subject to dismissal.

**B. THE COMPLAINT FAILS TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITY**

**1. Applicable Law**

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they deny humane conditions of confinement with

7

deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Wood v. Beauclair, 692 F.3d 1041, 1051 (9th Cir. 2012) (finding Eighth Amendment failure to protect claim requires "evidence that the supervisory defendants were on notice that [a guard] presented a substantial risk to [plaintiff]").

"Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." Wood, 692 F.3d at 1046 (citations omitted). "[A] prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020).

In addition, prison officials also have a duty to take reasonable steps to protect inmates from physical harm. See Farmer, 511 U.S. at 832. To state a claim for an Eighth Amendment violation based on failure to protect from harm, an inmate must show both objective and subjective components. Id. at 834. The objective component requires an "objectively insufficiently humane condition violative of the Eighth Amendment" which poses a substantial risk of serious harm. Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996). The subjective component requires prison officials acted with the culpable mental state, which is "deliberate indifference" to the substantial risk of serious harm. Farmer, 511 U.S. at 837-38; Estelle v. Gamble, 429 U.S. 97, 104-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Finally, vicarious liability does not apply to Section 1983 actions; rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Hence, a defendant may be held liable as a supervisor only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 652 F.3d at 1207 (internal quotation marks and citations omitted).

**2.     Analysis**

Here, Moreno alleges defendant Hull "contacted" and exposed Moreno's penis during a clothed body search "in a manner where female officer Luna could view [Moreno's] exposed penis." Dkt. 1 at 5. While it is not clear whether officer Luna observed Moreno's exposed penis, the mere fact of the exposure to a female guard does not rise to the level of an Eighth Amendment violation. See Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997) (finding routine unclothed searches of inmates by officials of the opposite sex "cannot be called inhumane" and therefore "do not rise to the level of an Eighth Amendment violation"). In addition, Moreno fails to allege defendant Hull's contact with Moreno's penis during a "random 'clothed' pat down body search" (a) lacked a legitimate penological justification, and (b) was in a sexual manner. Bearchild, 947 F.3d at 1144.

Moreno alleges defendant DeLeon advised Moreno on two occasions that if Moreno went through with his complaints against defendant Hull, Moreno would be sent to administrative segregation.[2] Dkt. 1 at 8-13. Defendant DeLeon cannot be

---

[2] To the extent Moreno seeks to raise a retaliation claim against defendant DeLeon, he has failed to allege (a) there would be no legitimate penological interest in putting him in administrative segregation during the investigation of his complaint against defendant Hull, or (b) the threat of administrative segregation chilled Moreno's exercise of his First Amendment rights. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) [a]n assertion that [a prison official] took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."); see Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (observing prisoner "must show that there

held liable pursuant to Section 1983 for defendant Hull's conduct on the basis of his supervisory role of sergeant. Iqbal, 556 U.S. at 676. As discussed, Moreno fails to allege facts demonstrating defendant Hull violated his Eighth Amendment rights, hence, Moreno cannot allege defendant DeLeon's personal involvement in a constitutional deprivation. Starr, 652 F.3d at 1207. In addition, defendant DeLeon could not have known of or disregarded an excessive risk to Moreno's health or safety, because Moreno did not tell defendant DeLeon about defendant Hull's conduct until June 4, 2018, which was after the May 31, 2018 incident. See Farmer, 511 U.S. at 837; Wood, 692 F.3d at 1051.

Moreno alleges defendants Rodriguez and Espinosa left harassing papers in Moreno's cell after a cell search, dkt. 1 at 16-17, Ex. M, and defendant Hernandez refused to allow Moreno to make a PREA call regarding defendant Hull's conduct until after she advised her supervisor of Moreno's intentions, id. at 7-8. It is unclear from the Complaint, and the Court is unable to discern or speculate, on what basis Moreno believes defendants Rodriguez, Espinosa, or Hernandez violated Moreno's Eighth Amendment rights when defendants Rodriguez and Espinosa searched his cell or defendant Hernandez refused to allow Moreno to immediately make a PREA call. See Little v. Baca, No. CV 13-0373-PA (RZ), 2013 WL 436018, at *3 (C.D. Cal. Feb. 1, 2013) (finding unclear pleadings violate Rule 8 by "leaving it to the Court to figure out what the full array of [a plaintiff's] claims is and upon what federal law, and upon what facts, each claim is based," and are subject to dismissal). Moreno, thus, fails to allege defendants Rodriguez, Espinosa, or Hernandez knew of and disregarded an excessive risk to Moreno's health or safety. See Farmer, 511 U.S. at 837; Wood, 692 F.3d at 1051.

---

were no legitimate correctional purposes motivating the actions he complained of"); Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (finding though an adverse action need not be an independent constitutional violation, inconsequential or de minimis harms do not constitute adverse actions).

10

Accordingly, Moreno's Eighth Amendment claims against Defendants in their individual capacity are subject to dismissal.

## C. THE COMPLAINT FAILS TO STATE A FOURTEENTH AMENDMENT CLAIM AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITY

### 1. Applicable Law

The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citations omitted). Due process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011).

In order to establish the deprivation of a protected liberty interest, a prisoner must allege an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). In order to establish the denial of procedural protections afforded by due process, a prisoner must allege denial of the requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), which include written notice, the right to call witnesses, the right to present documentary evidence, and the right to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. See Serrano v. Francis, 345 F.3d 1071, 1077-78 (9th Cir. 2003). However, a prisoner has no constitutional entitlement to have his prison grievances or appeals handled or decided in a particular

manner. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982)). In order to state a Section 1983 equal protection claim, a plaintiff must allege he was treated differently from others who were similarly situated without a rational basis or discriminated against based on his membership in a protected class. See Serrano, 345 F.3d at 1082 (requirements for Section 1983 equal protection claim based on membership in protected class); Gallo v. Burson, 568 F. App'x 516, 517 (9th Cir. 2014) (affirming district court dismissal of inmate's equal protection claim).[3]

**2. Analysis**

As an initial matter, it is unclear from the Complaint on what basis Moreno alleges Defendants violated his Fourteenth Amendment rights. See Little, 2013 WL 436018, at *3.

To the extent Moreno's Fourteenth Amendment claims arise out of the handling of his various grievances and Form 22's, Moreno is not entitled to have his prison grievances or appeals handled or decided in a particular manner. Ramirez, 334 F.3d at 860. Additionally, while Moreno appears to allege violations of various CDCR regulations, "the failure to comply with a prison policy, without more, is not sufficient to state a constitutional violation claim." Hammler v. Alvarez, No. 18-CV-326-AJB (WVG), 2019 WL 422575, at *7 (S.D. Cal. Feb. 4, 2019), report and recommendation adopted, No. 3:18-CV-0326-AJB-WVG, 2019 WL 3315567 (S.D. Cal. July 24, 2019)

---

[3] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

12

(citing Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990) (violation of state law does not give rise to a constitutional violation)).

To the extent Moreno's reference to the Fourteenth Amendment is an attempt to invoke the Equal Protection Clause, Moreno fails to allege "he was treated differently from others who were similarly situated without a rational basis or discriminated against based on his membership in a protected class." See Serrano, 345 F.3d at 1082.

Accordingly, Moreno's Fourteenth Amendment due process claims against Defendants in their individual capacity are subject to dismissal.

## V.

## **LEAVE TO FILE A FIRST AMENDED COMPLAINT**

For the foregoing reasons, the Complaint is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his First Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following three options:

13

1. Plaintiff may file a First Amended Complaint to attempt to cure the deficiencies discussed above. <u>The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.</u>

If Plaintiff chooses to file a First Amended Complaint, he must clearly designate on the face of the document that it is the "First Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint. In addition, the First Amended Complaint must be complete without reference to the Complaint, or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint. <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat all preceding complaints as nonexistent. <u>Id.</u> **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the First Amended Complaint.** <u>Lacey v. Maricopa Cty.</u>, 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a First Amended Complaint that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" <u>Ismail v. Cty. of Orange</u>, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); <u>see also</u> <u>Ferdik</u>, 963 F.2d at 1261. Thus, **if Plaintiff files a First Amended Complaint with claims on which relief cannot be granted, the First Amended Complaint will be dismissed without leave to amend and with prejudice.**

2. Alternatively, Plaintiff may file a notice with the Court that he intends to stand on the allegations in his Complaint. If Plaintiff chooses to stand on the Complaint despite the deficiencies in all of Plaintiff's claims identified above, then the Court will submit a recommendation to the assigned district judge **that the entire action be dismissed with prejudice for failure to state a claim**, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

3. Finally, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). <u>The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.</u>

**Plaintiff is explicitly cautioned that failure to timely respond to this Order will result in this action being dismissed without prejudice for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated: March 12, 2020

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge