UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORENO,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>V. HULL, ET AL.,<br><br>　　　　　　Defendant(s). | Case No. EDCV 20-272-CJC (KK)<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

## I.
## **INTRODUCTION**

Plaintiff Anthony Moreno ("Moreno"), an inmate proceeding pro se and in forma pauperis, filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his First Amendment rights. For the reasons discussed below, the Court dismisses the FAC with leave to amend.

## II.
## **BACKGROUND**

On January 24, 2020, Moreno, who is currently detained at Valley State Prison, constructively filed[1] a Complaint against five defendants V. Hull, A. DeLeon, R.

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); see

Rodriguez, J. Espinosa, and Hernandez ("Defendants"), who are correctional officers at Ironwood State Prison employed by the California Department of Corrections and Rehabilitation, in their individual and official capacities. ECF Docket No. ("Dkt.") 1. The Complaint arose out of incidents that occurred while Moreno was an inmate at Ironwood State Prison and alleged Eighth and Fourteenth Amendment violations and a state law claim for intentional infliction of emotional distress. Id.

On March 12, 2020, the Court dismissed the Complaint with leave to amend, finding A) the Eleventh Amendment barred Moreno's claims against Defendants in their official capacity; B) the Complaint failed to state an Eighth Amendment claim against Defendants in their individual capacity; and C) the Complaint failed to state a Fourteenth Amendment claim against Defendants in their individual capacity. Dkt. 12.

On May 28, 2020 Moreno constructively filed the instant FAC against Defendants in their individual and official capacities. Dkt. 14. The FAC alleges a First Amendment retaliation claim against all Defendants and sets forth substantially similar factual allegations as in the Complaint. Id. at 5.

According to the FAC, on May 31, 2018 at approximately 8:30 a.m., defendant Hull conducted a "random 'clothed' pat down body search" of Moreno. Id. at 5. During the search, defendant Hull "turned to female correctional officer R. Luna, directing her attention to a small tear located in [Moreno's] 'fly button crotch area' stating to her 'This is where inmates hide bundles of drugs.'" Id. at 5-6. Defendant Hull "spread open the 'fly area' of [Moreno's] pants and boxers, then contacted [Moreno's] penis while committing the exposure where such exposure was done in a manner where female officer Luna could view [Moreno's] exposed penis." Id. Moreno questioned defendant Hull regarding his "harassment and unprofessional

---

Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

2

conduct" and defendant Hull responded: "I'm gonna keep messing with you until I catch you" and "me and you can get unprofessional whenever you want." Id. at 6.

On June 1, 2018, Moreno submitted a Form 22 Inmate Request Form regarding defendant Hull's "sexual misconduct." Id. at 6-7.

On June 4, 2018, defendant Hull questioned Moreno regarding the Form 22. Id. When Moreno explained why he had filed the Form 22, defendant Hull said: "All right then motherfucker, it's on!  I'm gonna get you now." Id. at 7.

Later that same day, while returning to his housing unit, Moreno informed defendant Hernandez he wanted to make a Prison Rape Elimination Act ("PREA") call regarding defendant Hull's conduct.  Id. at 9.  Defendant Hernandez instructed Moreno to "go to his cell until she notified the sergent of Moreno's intentions." Id.

Later that same day, defendant Sergeant DeLeon came to Moreno's housing unit in connection with Moreno's request to make a PREA call.  Id.  Moreno told defendant DeLeon about the May 31, 2018 search incident, Hull's comments earlier that day, as well as two prior incidents with defendant Hull.[2]  Id. at 9-10.  Defendant DeLeon told Moreno: "If you go through with this then you are going to regret it. You are going to sit in the hole (administrative segregation) for six months pending an investigation, and that's not worth it because your claims do not merit a PREA call. Think this through very carefully."  Id. at 11.  Moreno alleges Defendant DeLeon told Moreno he "would stop defendant Hull's threatening (or action to harm or assault Plaintiff) behavior and that he would include 'in writing' that no threatening, harm, or retaliation would result from this or any previous action or discussion as long as Plaintiff if he submitted any paperwork forego[ing] the terms 'threat' and 'sexual harassment'".  Id.  Moreno also requested "the reduction in writing . . . [and] he

---

[2] Moreno alleges that on February 12, 2018, he was restrained, slammed into a wall and strip searched by defendant Hull and told "shit in [a plastic] bag or do you want to get fucked up and go to the hole." Id. at 9-10.  Moreno alleges that on May 16, 2018, defendant Hull told another inmate to "tell Moreno to quit putting dope up his ass." Id. at 10

3

wanted a written response from Defendant Hernandez as to why she denied Plaintiff the opportunity to make a PREA call". Id. Defendant DeLeon told Moreno to file a Form 22 and he would make sure defendant Hernandez responded to the Form 22 regarding her reason for denying the PREA call. Id. at 11-12. Moreno alleges defendant Hernandez failed to respond to the request, and defendant Hull continued to harass and threaten Moreno and stated in front of other inmates and guards that Moreno was "crying to the sergeant" and if Moreno "wants to play games then I'm gonna play too". Id. at 12-13.

On June 11, 2018, Moreno submitted a Form 22 requesting documentation regarding the February 12, 2018 incident with Defendant Hull because "it was quite clear that defendant Hull was going to keep harassing and threatening Plaintiff and defendant Hernandez had no intention of responding to the Form 22 . . . [despite] [Moreno] and Defendant DeLeon's agreement." Id. at 13. Five hours later, defendant DeLeon confronted Moreno and said: "I already told you Moreno, if you keep pressing this issue I'm gonna put you in the hole . . . and that's after I take you over to medical, put you in a paper jumpsuit for 24 hours, and perform a rape kit on you." Id. at 13-14.

On June 20, 2018, Moreno was interviewed by a lieutenant regarding defendant Hull's conduct and defendant DeLeon's "handling" of Moreno's allegations. Id. at 13-14. The interview resulted in Moreno being placed in administrative segregation. Id. at 14. Moreno was also taken to the Triage Treatment Center where a nurse and then a male doctor conducted a PREA "Screening Evaluation." Id. at 13-14. The next day on June 21, 2018, Moreno was interviewed as part of the "Investigative Services Unit (ISU)" regarding the May 31, 2018 search and allegations against defendant Hull for sexual misconduct. Id. at 15.

On June 28, 2018, Moreno was released from administrative segregation to A-Facility, rather than B-Facility where he had been housed previously. Id. at 16. Prior to his release, Moreno "began administrative remedy grievances as to the sexual

assault claim, the events that transpired February 12, 2018, [and] the [D]efendants' efforts to 'chill' Plaintiff from exercising his First Amendment rights." Id.

On July 17, 2018, while Moreno was walking on the exercise yard, defendants Hull and DeLeon were standing in front of the A-Facility Program Office giving "menacing glances" to Moreno, and defendant Hull informed another correctional officer: "There's the bitch who tried to PREA me." Id. at 19. Moreno submitted a Form 22 regarding the menacing glances and defendant Hull's comment. Id.

On July 18, 2018, Moreno submitted another Form 22 to defendant Rodriguez as to "why defendant DeLeon came to Building Two" the previous day. Id. at 20.

On July 21, 2018, defendant Rodriguez told Moreno: "Hey Moreno, I didn't know that you and Sergeant DeLeon w[ere] having problems. Don't be having me sign 22 Forms against officers 'cause we don't play that crying shit over here." Id. Later that day, defendants Rodriguez and Espinosa conducted a cell search of Moreno's cell and threw his paperwork and property on his top bunk. Id. at 21. Afterward, while Moreno was cleaning up his cell, he noticed two sheets of paper that did not belong to him titled "Hurt Feelings Report" and "Telling Form." Id. at 21, Ex. M.

On July 24, 2018, Moreno attempted to call the Coachella Valley Sexual Assault Hotline number, but when he had trouble completing the call, he informed defendant Rodriguez of the problem. Id. at 21. Defendant Rodriguez responded: "We'll put in a work order." Id. at 22. Moreno then went to a program office where another sergeant allowed to facilitate the call, which occurred on speakerphone in front of the sergeant and defendant Rodriguez. Id. On July 26, 2018, Moreno was informed the hotline number was "inoperable." Id. at 18.

On August 6, 2018, Moreno filed a "Staff Misconduct/Harassment" complaint against defendants Rodriguez and Espinosa for the cell search. Id. at 18-19.

On August 13, 2018, Moreno filed a request for his medical records pertaining to the PREA medical evaluation on June 20-21, 2018. Id. at 19.

5

Moreno seeks compensatory and punitive damages.  Id. at 22.  Moreno specifically notes his claims for monetary relief have been exhausted.  Id.

## III.

## STANDARD OF REVIEW

Where a plaintiff is incarcerated and/or proceeding in forma pauperis, a court must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A; see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007).  In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it.  Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011).  However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  A claim is facially plausible when it

1  "allows the court to draw the reasonable inference that the defendant is liable for the
2  misconduct alleged." Id.  The complaint "must contain sufficient allegations of
3  underlying facts to give fair notice and to enable the opposing party to defend itself
4  effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

5       "A document filed pro se is 'to be liberally construed,' and a 'pro se complaint,
6  however inartfully pleaded, must be held to less stringent standards than formal
7  pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008).
8  However, liberal construction should only be afforded to "a plaintiff's factual
9  allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d
10 339 (1989), and a court need not accept as true "unreasonable inferences or assume
11 the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock
12 Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

13      If a court finds the complaint should be dismissed for failure to state a claim,
14 the court has discretion to dismiss with or without leave to amend. Lopez v. Smith,
15 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Leave to amend should be granted if it
16 appears possible the defects in the complaint could be corrected, especially if the
17 plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106
18 (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot
19 be cured by amendment, the court may dismiss without leave to amend. Cato, 70
20 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

21                               **IV.**
22                        **DISCUSSION**
23 **A.  THE ELEVENTH AMENDMENT BARS MORENO'S CLAIMS**
24      **AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY**
25     **1.  Applicable Law**
26     "The Eleventh Amendment prohibits federal courts from hearing suits brought
27 against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951
28 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State School & Hosp. v. Halderman,

465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). As to state officials sued in their official capacity, the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief (including monetary damage claims) but does not immunize them from claims for prospective relief (such as forward-looking injunctive relief). Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908).

### 2. Analysis

Here, the Eleventh Amendment bars Moreno from pursuing claims that seek monetary relief against Defendants, who are state employees, in their official capacity. See Graham, 473 U.S. at 169-70 (holding the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity"). Moreno's claims against Defendants in their official capacity are, therefore, subject to dismissal.

## B. THE FAC FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM AGAINST DEFENDANTS HULL AND HERNANDEZ IN THEIR INDIVIDUAL CAPACITY

### 1. Applicable Law

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison, 668 F.3d at 1114 (citation omitted); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) [a]n assertion that [a prison official] took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)

1  (observing prisoner "must show that there were no legitimate correctional purposes
2  motivating the actions he complained of").

      Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School District, 467 F.3d 755, 770 (9th Cir. 2006).  An adverse action may be a harm or a threat of harm, and may be explicit or implied.  See Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009).  Though an adverse action need not be an independent constitutional violation, inconsequential or de minimis harms do not constitute adverse actions.  Watison, 668 F.3d at 1114 (to support a claim, a harm must be "more than minimal").

      In addition, "[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." Watison, 668 F.3d at 1114 (9th Cir. 2012); Pratt, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent[.]").

**2.      Analysis**

      **a.      Defendant Hull**

      Moreno alleges that during a random search, defendant Hull contacted and exposed Moreno's penis and stated that he was going to "keep messing with you until I catch you" and could "get unprofessional whenever you want." FAC at 6.  Moreno further alleges that after he submitted a grievance regarding the search, defendant Hull approached Moreno asking him about the grievance and stated, "All right then motherfucker, it's on!  I'm gonna get you now." Id. at 7.  Moreno further alleges defendant Hull continued to harass him and said he could "play games," and after Moreno was released from ad-seg, defendant Hull stated Moreno was a "bitch" who tried to "PREA" him and gave him menacing glances.  Id. at 19.

      First, to the extent Moreno raises a retaliation claim based on defendant Hull's allegedly harassing search, Moreno fails to set forth allegations that defendant Hull conducted the search in retaliation for any constitutionally protected conduct.  In fact,

it is unclear what, if any, action allegedly triggered Hull's search. See Patterson v. Forbes, No. 2-18-CV-2588-WBS-DMCP, 2019 WL 2994498, at *4 (E.D. Cal. July 9, 2019), report and recommendation adopted, 2019 WL 4302278 (E.D. Cal. Sept. 11, 2019) (dismissing retaliation claim "[b]ecause there are no allegations that the adverse actions by Defendant were in retaliation to Plaintiff's exercise of a constitutional right").

Second, to the extent Moreno raises a retaliation claim based on defendant Hull's non-specific statements and glares, Moreno fails to establish how these actions rise to the level of adverse actions that are not de minimums. See Rhodes, 408 F.3d at 567-68. Moreover, even if Moreno could establish that defendant Hull took adverse action against Moreno based on an exercise of his constitutional rights, Moreno fails to demonstrate his First Amendment rights were chilled. FAC at 16.

Hence, Moreno's First Amendment retaliation claim against defendant Hull is subject to dismissal.

### b. Defendant Hernandez

Moreno alleges defendant Hernandez refused to immediately let him make a PREA call on June 4, 2018 on his way back to his cell, and that she instead instructed Moreno to go to his cell until she notified defendant Sergeant DeLeon. Id. at 9. The Court finds the fact that Moreno was temporarily prevented from making a PREA call to report an incident that had occurred five days prior does not rise to the level of an adverse action that would deter a prisoner of "ordinary firmness" from further First Amendment activities. See Watison, 668 F.3d at 1114; Brown v. Fitzpatrick, No. 2:14-CV-00397-SAB, 2015 WL 13360316, at *3 (E.D. Wash. May 21, 2015), aff'd, 667 F. App'x 267 (9th Cir. 2016) (finding no adverse action where the plaintiff's "placement in a cell with property restrictions was only temporary"). Even if Moreno could demonstrate defendant Hernandez's failure to immediately allow Plaintiff to make the PREA call was an adverse action, he has not demonstrated this decision was "because of" his protected conduct of asking to make the PREA call, rather than to

abide by prison regulations. Moreover, Moreno has not sufficiently alleged such action had a chilling effect on his pursuing the PREA call.

Hence, Moreno's First Amendment retaliation claim against defendant Hernandez is subject to dismissal.

## V.
## **LEAVE TO FILE A SECOND AMENDED COMPLAINT**

For the foregoing reasons, the FAC is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the FAC are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his Second Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following three options:

1. Plaintiff may file a Second Amended Complaint to attempt to cure the deficiencies discussed above. The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the Second Amended Complaint, which the Court encourages Plaintiff to use.

1       If Plaintiff chooses to file a Second Amended Complaint, he must clearly
2 designate on the face of the document that it is the "Second Amended Complaint," it
3 must bear the docket number assigned to this case, and it must be retyped or
4 rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not
5 include new defendants or allegations that are not reasonably related to the claims
6 asserted in the FAC. In addition, the Second Amended Complaint must be complete
7 without reference to the FAC, Complaint, or any other pleading, attachment, or
8 document.

9       An amended complaint supersedes the preceding complaint. <u>Ferdik v.
10 Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat
11 all preceding complaints as nonexistent. <u>Id.</u> **Because the Court grants Plaintiff
12 leave to amend as to all his claims raised here, any claim raised in a preceding
13 complaint is waived if it is not raised again in the Second Amended Complaint.**
14 <u>Lacey v. Maricopa Cty.</u>, 693 F.3d 896, 928 (9th Cir. 2012).

15       The Court advises Plaintiff that it generally will not be well-disposed toward
16 another dismissal with leave to amend if Plaintiff files a Second Amended Complaint
17 that continues to include claims on which relief cannot be granted. "[A] district
18 court's discretion over amendments is especially broad 'where the court has already
19 given a plaintiff one or more opportunities to amend his complaint.'" <u>Ismail v. Cty.
20 of Orange</u>, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); <u>see also</u> <u>Ferdik</u>, 963 F.2d at
21 1261. Thus, **if Plaintiff files a Second Amended Complaint with claims on
22 which relief cannot be granted, the Second Amended Complaint will be
23 dismissed without leave to amend and with prejudice.**

24     2.     Alternatively, Plaintiff may file a notice with the Court that he intends to
25 stand on the allegations in his FAC. If Plaintiff chooses to stand on the FAC despite
26 the deficiencies in the claims identified above, then the Court will submit a
27 recommendation to the assigned district judge **that the deficient claims discussed
28 in this Order be dismissed with prejudice for failure to state a claim**, subject to

1 Plaintiff's right at that time to file Objections with the district judge as provided in the
2 Local Rules Governing Duties of Magistrate Judges. If the assigned district judge
3 accepts the findings and recommendations of the undersigned Magistrate Judge and
4 dismisses the deficient claims discussed in this Order, the Court will issue a separate
5 order regarding service of any claims remaining in the Complaint at that time.

6       3. Finally, Plaintiff may voluntarily dismiss the action without prejudice,
7 pursuant to Federal Rule of Civil Procedure 41(a). <u>The Clerk of Court is directed to
8 mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff
9 to use if he chooses to voluntarily dismiss the action.</u>

10       **Plaintiff is explicitly cautioned that failure to timely respond to this**
11 **Order will result in this action being dismissed without prejudice for failure to**
12 **prosecute and/or obey Court orders pursuant to Federal Rule of Civil**
13 **Procedure 41(b).**

15 Dated: July 01, 2020

16 _____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge

13